**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**H. Daniel WHITMAN,
Defendant-Appellant.**

No. 84–5144.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1985.
Decided Sept. 20, 1985.

Bruce J. Kelton, Los Angeles, Cal., for plaintiff-appellee.

Alan M. Dershowitz, Cambridge, Mass., James A. Twitty, Beverly Hills, Cal., for defendant-appellant.

Before SKOPIL and CANBY, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Appellant, H. Daniel Whitman, was found guilty by a jury of conspiracy to

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

murder, tampering with a witness, retaliation against a witness, and conspiracy to deprive a witness of his civil rights. He contests several of the district court's evidentiary rulings and the court's conduct. We hold that appellant was improperly denied the opportunity to rebut the government's motive evidence, and we reverse.

### Facts

Beginning in December, 1981, Raymond Cohen assisted the Secret Service in an investigation of a counterfeiting scheme. This scheme involved Jack Catain who, as a result of Cohen's information, was indicted for violating federal counterfeiting statutes.

Later, the Internal Revenue Service (IRS) investigated certain persons who failed to report income from the sales of 1980 Super Bowl tickets. Raymond Cohen provided IRS agents with information in this tax evasion investigation. The information included documents which implicated appellant. In November, 1983, IRS agents attempted to interview appellant, but he refused to answer questions without his attorney.

Appellant knew that Raymond Cohen was a government informant. He told his associate Robert Cohen (no relation to Raymond Cohen) that Raymond gave the government information on Catain. Appellant also knew that Raymond had turned over documents about him to the IRS.

Raymond, Robert and appellant had known each other for at least twelve years. Robert testified that appellant told him that Raymond had become a "problem" to appellant and that he told appellant that Ted Shove could "take care of his problem with Ray." He also testified that later appellant told him to arrange for Shove to murder Raymond.

Neither appellant nor Robert knew that Shove was a government informant. When contacted by Robert, Shove immediately reported the murder plan to the Federal Bureau of Investigation. Under its direction, Shove recorded his conversations with Robert.

On November 15, 1983, Robert drove Shove to Raymond's place of work to familiarize Shove with the area. Later that day, Shove went to Robert's home and told him that he had "cancelled Ray's ticket." In fact, Raymond was alive and Shove merely pretended to have murdered him. Shove gave Robert several items which he said were taken from Raymond's body and also a photograph purporting to show Raymond's corpse. Robert testified that he telephoned appellant that night and told him that the "problem now was taken care of."

Shove recorded several of his conversations with Robert. Federal agents arrested Robert for conspiracy to murder. Robert agreed to cooperate with the government after he was confronted with a tape recording of his conversation with Shove.

During the next four days, Robert recorded his conversations with appellant about the payment to Shove for the murder. Appellant said he believed that Shove had killed Raymond, but that he had to be certain Shove carried out the murder because if Raymond continued to aid the IRS, appellant might go to jail.

On December 6, 1983, federal agents arrested appellant. Appellant admitted that he and Robert discussed the murder of Raymond and that Robert called appellant to inform him that the murder contract had been carried out.

A grand jury indicted appellant and Robert for conspiracy to murder, tampering with a witness, retaliating against a witness, and civil rights conspiracy. 18 U.S.C. §§ 371, 1512, 1513, 241.

Robert pleaded guilty to the tampering count and received a three-year sentence. He testified for the government at appellant's trial. After the jury trial, appellant was convicted on all four counts. The district court sentenced him to two concurrent eight-year prison terms, five years probation, and a $10,000 fine.

Appellant asserts that the district court's evidentiary rulings and conduct during the

trial requires the reversal of his conviction. Specifically, he contends that the district court erred when it (1) precluded appellant from presenting evidence to rebut the prosecution's motive evidence, (2) precluded appellant from presenting evidence of his theory of the case, namely that Robert acted alone, (3) admitted the tape-recorded statements of informant Shove, (4) intimated the court's belief that appellant was guilty and assisted the prosecutor, and (5) emphasized to the jury that appellant had refused to answer questions without his attorney.

### Discussion

**A. *Was the appellant improperly precluded from presenting motive evidence?***

Appellant contends that the central theory of the government's case was that appellant arranged Raymond's murder to retaliate against Raymond for the information he provided about Jack Catain. Appellant intended to rebut this "Catain motive" by showing that he had no reason to act on Catain's behalf. The district court did not admit this evidence. It ruled that Catain was not named in the indictment as part of the conspiracy and therefore was not relevant to the trial.

The government asserts that its theory of the case was that appellant acted on his own behalf to stop Raymond from implicating him. It denies that it contended appellant was acting on Catain's behalf or that its references to Catain were to advance the "Catain motive." It argues that these references were made only to show that appellant realized Raymond was capable of providing information that could put people in prison.

Contrary to its present contentions, throughout the trial the government attempted to establish that appellant arranged for Raymond's murder for his actions against Catain. Early in the trial, the court was concerned about the relevance of evidence introduced by the government about Catain, and it asked: "Is one of the things that you intend to contend is that there was retaliation against him [Raymond] because of supplying information about Catain?" The government answered "yes." Later in the same discussion, the government repeated that: "[O]ne of the things we intend to prove is that Mr. Whitman was motivated to retaliate for his [Raymond] having cooperated in this investigation." "This investigation" was the counterfeiting scheme involving Catain.[1] The court was reluctant to admit the evidence about Catain,[2] and the government temporarily withdrew its witness. The government continued to argue that the evidence about Catain was important to explain appellant's motive for killing Raymond. Later in the trial, the court did allow the witness to testify about Catain. The government also showed that Catain knew of the planned murder and may have even authorized it. Finally, in its closing argument, the government argued that part of appellant's "motivation for soliciting the murder of Ray Cohen" was because Raymond had "informed on Jack Catain and others."

The Catain motive was not the government's only theory of the case. It also argued that appellant had arranged Raymond's murder to protect himself from Raymond's testimony. In one of the taped conversations, appellant told Robert that he was concerned that Raymond's "surprises" could put him in jail, but the extent of his knowledge of Raymond's informant activities and how much of a threat Raymond posed is uncertain. It may be that the government, realizing the weakness of its

---

1. The government also argued, "Mr. Robert Cohen asked Mr. Whitman why did this have to be done about Ray, talking about the killing. And Mr. Whitman explains to him that Ray Cohen informed on Jack Catain and gave the Secret Service information on Jack Catain, introduced an undercover agent to Jack Catain and that is one of his explanations for why he wanted Mr. Raymond Cohen murdered and that is on tape."

2. The court was skeptical, it said, "It may well be that these two fellows loved Catain so much that they were willing to conspire to have the witness killed, I don't know, because of Catain. Usually people don't have that love of their fellow man so much."

case, attempted to bolster its evidence by arguing the Catain motive. In any event, the government's explanation on appeal for its evidence about Catain is flatly contradicted by the record.

Appellant identifies at least three instances in which he was precluded from rebutting government evidence about Catain. One, Robert testified that appellant did not want him to meet with Jack. The court refused to allow appellant to establish that "Jack" was not Jack Catain but Jack Myers. Two, appellant attempted by questioning Raymond, who was a friend of both appellant and Catain, to establish that appellant and Catain were not close friends. The court refused to permit appellant to do this on the ground that this testimony was not relevant. Three, appellant attempted to question Robert on whether Catain wanted Raymond murdered. The court did not permit it on the ground that it was not relevant.

The district court has broad discretion to determine whether evidence is relevant. *See United States v. Cox*, 633 F.2d 871, 874 (9th Cir.1980), *cert. denied*, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981). Furthermore, the court has discretion to admit or deny motive evidence. *See United States v. Fernandez*, 497 F.2d 730, 735–36 (9th Cir.1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1423, 43 L.Ed.2d 670, *reh'g denied*, 421 U.S. 1017, 95 S.Ct. 2425, 44 L.Ed.2d 686 (1975). This discretion is limited by the appellant's due process right to present a defense and his Sixth Amendment right of confrontation. *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1966). The district court was free to exclude evidence of appellant's motive, but once the government produced evidence from which the jury could reasonably infer the Catain motive, appellant had the right to rebut this evidence. *See United States v. Crenshaw*, 698 F.2d 1060, 1066 (9th Cir.1983).

In *Crenshaw*, the government intended to show that defendant piloted a getaway plane and thus aided and abetted a robbery, as charged. But the government also presented evidence that the defendant planned the robbery. The court held that the question of who planned the robbery was not at issue and refused to admit defendant's rebuttal evidence that another person did the planning. This court reversed. We held that the issue may have been irrelevant at the start of trial, but once the government raised the issue, the defendant should have been permitted to rebut it. *Id.* at 1066. Here, the question of appellant's Catain motive may have been irrelevant at the start of trial, but once the government presented the theory, appellant had the right to rebut it.

Because the jury may have concluded that appellant conspired to murder Raymond in retaliation for his incrimination of Jack Catain, we must reverse and remand for a new trial.

B. *Tape-recorded statements of informant Shove.*

Because we have ordered a retrial on other grounds, we need not reach several other issues raised by appellant, including his contention that the trial court impermissibly assisted the prosecution and intimated to the jury its belief that the appellant was guilty. We need not belabor here the need for a trial judge to avoid the appearance of partiality or hostility to one side, *see Rogers v. United States*, 609 F.2d 1315, 1318 (9th Cir.1979), and we think it unlikely that any arguably improper comments by the trial court will recur on trial. However, appellant's contention that the court improperly admitted Shove's statements requires a short discussion.

Ted Shove, the government informant, recorded his conversations with Robert when they planned Raymond's murder. The district court admitted these tapes into evidence and played them for the jury. Appellant contends that Shove's statements are inadmissible hearsay and highly prejudicial.

The district court gave three reasons for admitting Shove's statements: 1) that they met the coconspirator exception to the hearsay rule, Fed.R.Evid.

**1352**

801(d)(2)(E), 2) that they were a result of an inquiry by a coconspirator, and 3) that they were not offered for their truth.

Recently, we upheld the admission of taped conversations between conspirators and a government informant similar to those here. *United States v. Tille,* 729 F.2d 615 (9th Cir.), *cert. denied,* —— U.S. —— 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). Here, the court did not admit the informant's statements for their truth but only to show that they were made. *See also United States v. Rodriguez,* 509 F.2d 1342, 1348 (5th Cir.1975) (informant's statements used to place replies in context).

Shove's statements were not admitted for their truth but to enable the jury to understand Robert's taped statements, and the jury was so instructed. Shove later testified, and appellant had an opportunity to cross-examine him.

Appellant has also failed to show that the danger of unfair prejudice from Shove's inflammatory and profane statements substantially outweighed the probative value of the evidence. *See United States v. Kenny,* 645 F.2d 1323, 1342 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). There was no error in admitting Shove's recorded statements.

We hold that the district court committed reversible error in preventing appellant from presenting motive evidence. The judgment of conviction is therefore RE-VERSED and the case REMANDED for a new trial.