981 F.2d 1257
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John Allen COX, Petitioner-Appellant,
v.
B.J. BUNNELL, Superintendent, California Correctional
Institution, Tehachapi, Respondent-Appellee.
 No. 91-16114.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 11, 1992.
Decided Dec. 8, 1992.
As Amended on Denial of Rehearing and Rehearing
En Banc April 6, 1993.
 
 Before BOOCHEVER, REINHARDT and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner John Cox was convicted of conspiracy to commit murder and first degree murder in California state court. He appeals the district court's denial of his petition for a writ of habeas corpus, arguing that the state trial court impermissibly limited the cross-examination of the prosecution's key witness, Jamie Spanke. Cox also challenges the admission of Spanke's testimony as violative of due process because of the manner in which Spanke was promised a plea bargain. We affirm.
 
 BACKGROUND
 
 3
 Gayle and Ray Yocum were shot to death on December 20, 1983. Based on a tip, the police suspected that 17-year-old Jamie Spanke was involved in the murders; Spanke was an acquaintance of the victims' son, Kevin. Although a search of Spanke's car revealed a spent .22 casing matching those found in the Yocum residence, Spanke denied any knowledge of the murders.
 
 
 4
 In a later interview of Spanke, the police outlined their theory that Spanke drove the car to the murder site but did not actually shoot the Yocums. Although Spanke's father inquired about a plea bargain or immunity in exchange for his son's cooperation, the police made it clear that they would not be willing to enter a plea bargain with Spanke if he had actually shot the Yocums. After speaking to his father, Spanke admitted driving petitioner Cox and a fourth co-conspirator, Mark Lawson, to and from the homicide scene, and discarding the weapons in exchange for money from Kevin Yocum. Spanke signed a plea bargain agreement stating that if he did not actually shoot the Yocums and if he testified truthfully in all procedures related to the homicides, he could plead to second degree murder and remain in the jurisdiction of the Juvenile Court until he turned 25.
 
 
 5
 At Cox's trial, Spanke was the prosecution's key witness. He testified that Kevin Yocum wanted to kill his parents for inheritance money and had asked Spanke to do the job because Spanke had previously shot someone else. Instead, Yocum and Spanke enlisted Cox to kill the Yocums for $10,000 and an automobile, while Spanke received $7,000 for his participation. Spanke also testified that one week prior to the homicides, Cox had shown Spanke and Yocum a .30-06 rifle and a .22 semi-automatic rifle which Cox had stolen from a neighbor.
 
 
 6
 On direct examination, the prosecution questioned Spanke about the non-fatal shooting of his stepfather. He testified that the 1981 or 1982 shooting occurred because his stepfather beat his mother and himself. Later at trial, he admitted to extensive participation in the Yocum murder plan, yet stated that he did not actually kill the Yocums:
 
 
 7
 Defense Counsel: Why didn't you do the murders yourself for as much money as you could get?
 
 
 8
 ....
 
 
 9
 Spanke: Because I wasn't going to have nothing to do with murder. I didn't personally think I would get off on going and killing people that have nothing to do with me....
 
 
 10
 Q: You didn't feel you could kill people for money, actually shoot 'em?
 
 
 11
 A: I don't know if I could or not, until you tried it. I guess anybody probably could but I didn't do it because I didn't want to.
 
 
 12
 Q: You didn't want to kill somebody for money?
 
 
 13
 A: Yes.
 
 
 14
 Q: But isn't it true, Mr. Spanke, that you have shot somebody with the intent to kill them before for money?
 
 
 15
 RT 2975-76.
 
 
 16
 The prosecution objected at this point to defense counsel's desired impeachment of Spanke's testimony. Relying on a police report from the district attorney's office, defense counsel made an offer of proof that Spanke and his sister had planned the killing of their stepfather for insurance money, and that Spanke shot his stepfather five times with a .22 gun pursuant to this plan. Although Spanke told the authorities that the shooting was related to "family problems," the police report included Spanke's admissions to a good friend, Ronnie Serpa, that he had tried to kill his stepfather for insurance money. When defense counsel renewed his request, he also offered to produce a detective on the Yocum case, to whom Spanke had confirmed that the above admission had indeed taken place. The trial court rejected these arguments, finding that the requested cross-examination involved impeachment on a collateral issue, that it failed to show any common scheme or design, and that it was inadmissible prior misconduct by a juvenile. Citing California Evidence Code § 352, he ruled that the slight relevance of the proffered cross-examination was outweighed by the prejudicial effect of the evidence and the possible consumption of time.
 
 
 17
 Cox was convicted of conspiracy and two counts of first degree murder on June 18, 1985. He was sentenced to life without parole. After exhausting his state remedies, Cox petitioned the District Court for the Northern District of California for a writ of habeas corpus. On October 27, 1989, the district court found that the admission of Spanke's testimony did not deprive Cox of due process. On June 3, 1991, the district court dismissed Cox's final claim regarding the limited scope of the Spanke cross-examination and denied the writ. This timely appeal followed.
 
 DISCUSSION
 I. Limitation of Spanke Cross-examination
 
 18
 Cox argues that the trial court's limitation of the cross-examination of Spanke violated his Sixth Amendment right to confrontation and his Fourteenth Amendment right to due process. He contends that the excluded evidence establishing that the prior shooting by Spanke was a failed murder attempt for insurance money rather than an act of self-defense was critical to allow the jury to infer that Spanke was the actual killer of the Yocums. We review de novo the district court's denial of his petition for habeas corpus. See Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989).
 
 A.
 
 19
 As a threshold matter, we agree that the trial court, by limiting the cross-examination of Spanke, deprived the defense of an opportunity to introduce valuable evidence. The primary purpose of defense counsel's cross-examination was not to attack Spanke's general credibility, but to cast doubt upon his explanation that he did not actually shoot the Yocums himself. In renewing his request for the desired cross-examination, defense counsel explained:
 
 
 20
 Mr. Spanke knows all the details of the [Yocum] killing. He's testified to it.... We're establishing that as part of our defense, I think we're entitled to establish, who did the killing, if our client didn't. We think that this is--impeaches Mr. Spanke's denial that he has the ability to do the killing and therefore that's why he didn't do it.
 
 
 21
 RT 4116.
 
 
 22
 The trial court, however, saw little relevance or exculpatory value in the defense's proffered evidence:
 
 
 23
 ... what you're really trying to do is bring out character evidence to impugn [Spanke's] credibility on a totally collateral incident that happened on a totally different circumstances, okay? ....
 
 
 24
 And the idea basically is [Cal.Evid.Code s] 352 problem because it takes up a lot of time going into all those previous events.... And its relevancy is very remote because all it goes to is to affect the credibility of the witness.
 
 
 25
 RT 4117-18. See also RT 2982-83. Thus the record indicates that the balance struck between the probative value of the evidence and the trial court's concern to expedite the case was premised upon a serious underweighting of the relevance of the evidence.[1] See Cal.Evid.Code § 352 (West 1966) (authorizing exclusion of evidence if its probative value is "substantially outweighed" by undue consumption of time, substantial danger of undue prejudice or confusion of the jury).
 
 
 26
 Our conclusion that the probative value of the excluded evidence was significant is supported by Cal.Evid.Code § 1101(b) (West Supp.1992). Section 1101(b) provides, in pertinent part: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity) ... other than his or her disposition to commit such an act." Assuming the proffered evidence was true, the parallels between the two offenses pointed to more than Spanke's criminal disposition to support petitioner's theory that Spanke actually shot the Yocums. Both involved Spanke planning and conspiring murder with others for pecuniary gain. Both involved victims known to Spanke--his stepfather and his friend's parents--rather than strangers. Both shootings took place at the victim's house at night. Both involved firearms, a .22, as the means of executing the crime. Both shootings occurred within two years: the Yocum murders took place in 1983, while Spanke shot his stepfather in 1981. Thus, not only did this evidence impeach Spanke's credibility, but it also supported the inference that Spanke may have shot the Yocums.
 
 
 27
 In contrast, the interests cited by the court to exclude the evidence--prevention of undue delay and prejudice--were not as weighty. The additional cross-examination of Spanke concerning his motive for shooting his stepfather could not have been very time-consuming in the context of a two-month trial. An entirely different question would arise if Cox then sought to rebut Spanke's responses with testimony of additional witnesses. Courts have much greater discretion in curtailing such an expansion of a trial. See Trust Services of America, Inc. v. United States, 885 F.2d 561, 569 (9th Cir.1989) (trial court has broad discretion whether to admit extrinsic evidence to rebut the testimony of a witness). As to undue prejudice, although California law protects the prosecution as well as the defense from the use of prejudicial evidence with little probative value, see People v. Wright, 703 P.2d 1106, 1111 (1985), the risk of unwarranted prejudice to Spanke or the prosecution was minimal here, when viewed in light of the probative value of the desired cross-examination.
 
 
 28
 Finally, we are troubled because the prosecution was permitted to present its theory of the stepfather shooting, while Cox was denied the opportunity to rebut or impeach this evidence. Even if a trial court has the discretion to exclude motive evidence as a collateral issue, once the government has "opened the door" by producing evidence from which the jury could reasonably infer the prosecution's theory, the defendant should be permitted to rebut it. See United States v. Whitman, 771 F.2d 1348, 1351 (9th Cir.1985) (finding reversible error in refusing to allow defendant to rebut evidence of prosecution's motive theory, notwithstanding that such motive may have been irrelevant at the start of trial); cf. United States v. Crenshaw, 698 F.2d 1060, 1066 (9th Cir.1983) (even if the identity of who planned the robbery was irrelevant to the case, once the government presented proof that defendant did so, defendant should have been allowed to rebut prosecution's inference). On the facts of this case, this reasoning applies with some force to motive evidence concerning an accomplice-witness' prior crime.
 
 
 29
 The purpose of Spanke's direct examination regarding the circumstances of the prior shooting is apparent: the prosecution sought to preempt the introduction of this damaging evidence by the defense by characterizing the incident in a manner favorable to its case. Had cross-examination been allowed, it may very well have supported Spanke's testimony of an act of self-defense; on the other hand, Cox's proffered evidence of the accomplice who planned, conspired, and attempted a murder for a similar motive may have prevailed. Not only, then, was petitioner denied the opportunity to further his defense theory that Spanke was the more likely killer because he had attempted to kill his stepfather for a similar reason, but the prosecution was also permitted to present its sympathetic and ultimately untested version of the prior incident. Under these circumstances, the limitation of Spanke's cross-examination concerning the shooting of his stepfather is troubling.
 
 B.
 
 30
 We next consider whether the trial court's action was so prejudicial that it constituted a violation of Cox's constitutional rights. The Sixth Amendment right to confrontation embraces the right to an adequate and effective cross-examination of witnesses, for "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974). "[W]ide latitude in cross-examination is especially appropriate when the key witness is an accomplice of the accused." Burr v. Sullivan, 618 F.2d 583, 587 (9th Cir.1980).
 
 
 31
 The trial court, of course, retains broad discretion to impose reasonable limits on cross-examination. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); Chipman v. Mercer, 628 F.2d 528, 530 (9th Cir.1980). Thus, a Sixth Amendment violation will normally be found only if the jury was " 'denied sufficient information to appraise the biases and motivations of the witness.' " United States v. Jenkins, 884 F.2d 433, 436 (9th Cir.), cert. denied, 493 U.S. 1005 (1989). In resolving conflicts between a state's evidentiary rules and a defendant's constitutional rights, we "balance the importance of the evidence against the state interest in exclusion". Perry v. Rushen, 713 F.2d 1447, 1452 (9th Cir.1983), cert. denied, 469 U.S. 838 (1984).
 
 
 32
 In Van Arsdall, the Court states that the Confrontation Clause was violated by prohibiting cross-examination "designed to show a prototypical form of bias on the part of the witness," which could expose to the jurors facts from which they "could appropriately draw inferences relating to the reliability of the witness." 475 U.S. at 680. The error in limiting the cross-examination of Spanke did not rise to this level. When the defendant has been afforded substantial cross-examination, courts are less inclined to find Confrontation Clause violations. Bright v. Shimoda, 819 F.2d 227, 229 (9th Cir.1987), cert. denied, 485 U.S. 970 (1988). In this case, Cox's counsel cross-examined Spanke at length. The terms of Spanke's plea bargain and the nature of his undisputed involvement in the Yocum conspiracy were extensively explored, thereby affording the jury sufficient information to appraise his biases and motivation to shift the blame to Cox. As for the non-impeachment value of the evidence, we recognize that the similarities between the two offenses tended to show that Spanke was involved in both crimes. This, however, was not new information for the jury. The crux of petitioner's argument, then, is that further cross-examination of Spanke would lead the jury to conclude that Spanke killed the Yocums by actually pulling the trigger, rather than merely planning and assisting in every other aspect of the crime. But Spanke had already admitted to his extensive participation in the homicides. Thus the exclusion of the motive testimony regarding the shooting of his stepfather did not constitute a prohibition of showing a prototypical form of bias.
 
 
 33
 Citing United States v. Armstrong, 621 F.2d 951 (9th Cir.1980) and United States v. Stevens, 935 F.2d 1380 (3rd Cir.1991), Cox also argues that the exclusion of other-crimes evidence, if central to the guilt or innocence of an accused, constitutes a deprivation of due process. Whether rooted in the right of confrontation or the right to due process, "the Constitution guarantees the accused 'a meaningful opportunity to present a complete defense.' " Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)); United States v. Lopez-Alvarez, No. 88-5421, slip. op. 8259, 8267 n. 4 (9th Cir. July 8, 1992).
 
 
 34
 His reliance on these cases, however, is somewhat misplaced. Not only were Armstrong and Stevens premised upon federal evidentiary rather than constitutional principles, both involved the exclusion of evidence which indicated that a third person had committed the crime at issue. Here, of course, Cox challenges the exclusion of evidence regarding Spanke's involvement in another crime, from which the jury must infer that Spanke had actually shot the victims in the instant offense. In contrast to cases such as Armstrong or Stevens, authorities in our circuit and sister circuits indicate a general reluctance to find constitutional error arising from the exclusion of evidence concerning the prior crimes of others. See, e.g., Brewer v. Nix, 963 F.2d 1111, 1113-14 (8th Cir.1992) (holding that Sixth Amendment was not violated in limiting cross-examination about prior manslaughter conviction of prosecution's key witness as cumulative motive evidence, where the witness allegedly drove defendant to the murder site and was granted immunity from charges arising from the incident), petition for cert. filed, --- U.S.L.W. ---- (U.S. Aug. 6, 1992) (No. 92-5416); United States v. Monks, 774 F.2d 945, 953-54 (9th Cir.1985) (finding no abuse of discretion in limiting cross-examination about witness' possible involvement in a prior burglary to show that a third person committed the bank robbery at issue); United States v. Kennedy, 714 F.2d 968, 973-74 (9th Cir.1983) (in rape and murder case, finding no abuse of discretion in limiting cross-examination of defense's prime suspect about his history of sexually abusive behavior, including a pornography-related arrest, because the trial court could find the inquiry concerned collateral matters), cert. denied, 465 U.S. 1034 (1984).
 
 
 35
 Because we conclude the trial court's error did not violate Cox's constitutional rights, we need not decide whether the court's error was harmless. See generally Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (holding that Confrontation Clause violations are subject to harmless error analysis). We do note, however, that substantial evidence corroborated Spanke's testimony that Cox had committed the crimes. The .22 rifle which killed Ray Yocum belonged to Cox's father and had been seen in petitioner's bedroom one month prior to the homicides. Evidence indicated that Cox also stole the .30-06 rifle which killed Gayle Yocum. Three witnesses testified that Cox tried to secure a gun in December. Spanke offered an alibi as to his whereabouts around the time of the shooting which was corroborated by a disinterested witness, Andrew Ramm. While not constituting direct admissions, Cox also made some incriminating statements to several police officers which were uncontroverted. Moreover, aside from impeachment, the main thrust of the curtailed cross-examination was to indicate that Spanke rather than Cox had fired the fatal shots. Cox, however, would have received the same sentence of life imprisonment without parole whether he aided and abetted the murders or actually shot the Yokums. See Cal.Penal Code § 190.2 (West Supp.1992). In the sentencing phase of the case the jury was limited to the choice of imposing the death penalty or life without parole. Viewed in the context of the entire trial, we conclude that the limitation of Spanke's cross-examination did not impair Cox's constitutional rights.
 
 II. Admission of Plea-Bargained Testimony
 
 36
 Cox also claims that he was denied due process by the manner in which Spanke was promised a plea bargain. His challenge is premised on the theory that Spanke's testimony was inherently coercive and suspect, because Spanke faced the possibility of a life sentence absent the plea agreement. Cox thus argues that Spanke's testimony should have been excluded at trial.
 
 
 37
 As an initial matter, respondent contends that this issue is not properly before this court, because Cox only referred to the cross-examination issue in his petition for a certificate of probable cause. In this circuit, the district court's issuance of a limited certificate of probable cause does not restrict the appellate court's review to those issues stated in the certificate. See Van Pilon v. Reed, 799 F.2d 1332, 1335 (9th Cir.1986). Moreover, on November 1, 1989, petitioner filed a notice of appeal from the court's order dismissing his plea bargain claim. See Clerk's Record (C.R.) 21. Because the certificate of probable cause informs us that petitioner is not abusing the writ and the filed document evidences a clear intent to appeal the plea bargain issue, we now turn to the merits of the claim.[2]
 
 
 38
 Contrary to Cox's belief that this is a case of first impression, we have addressed and rejected his argument in United States v. Moody, 778 F.2d 1380 (9th Cir.1985), modified, 791 F.2d 707 (1986). In Moody, a witness testified against his co-conspirators in a drug smuggling conspiracy, pursuant to a plea bargain under which he was promised a lenient sentence. Like Cox, defendants argued that the witness' testimony was analogous to a coerced confession and should have been excluded from defendants' trial. Id. at 1384. We rejected their contention, explaining that the role of cross-examination in our truth-seeking process yielded different results when applied to a defendant's own involuntary confession as opposed to a third person's plea bargained testimony:
 
 
 39
 ... Where the damning words come from a defendant's own mouth, the jury is likely to rely on them despite evidence that the confession was coerced.... Examination of the defendant on the stand is an insufficient safeguard against this danger.... In contrast, evidence that testimony is given pursuant to a plea bargain casts doubt on the witness's statements that tend to show a defendant's guilt--doubt which defense counsel can develop on cross-examination....
 
 
 40
 Whatever "coercion" may be involved in the properly monitored plea bargaining process, it is not the kind of coercion that leads to objectionable, involuntary confessions.
 
 
 41
 Id. at 1384-85 (citations omitted). In this case, Spanke and other witnesses were extensively cross-examined about the terms of the plea bargain and the circumstances leading to the agreement. A further procedural safeguard consisted of the judge's specific jury instructions to view an accomplice's testimony with distrust and to require corroboration of such testimony before convicting Cox. We thus disagree that the admission of Spanke's testimony violated Cox's constitutional rights.
 
 
 42
 Cox also suggests that Spanke's testimony was untruthful because he was encouraged to testify in a manner consistent with an objectionable term of the plea bargain. Specifically, he takes issue with the condition requiring that Spanke was not the actual shooter of the Yocums. See C.R. 12 ex. A at 19-20. This provision, however, only stated the assumption that if further evidence or investigation revealed that Spanke had been the actual shooter, the plea agreement would be rendered void. Furthermore, the agreement was expressly contingent upon the requirement that Spanke "testify truthfully in all procedures". Id. at 6 n. 2. Had Spanke lied, the agreement would have been invalidated and he also would have faced the threats of prosecution as an adult and a life sentence. Cf. United States v. Dailey, 759 F.2d 192, 196-97 (1st Cir.1985) (condition of "complete and honest testimony" in plea agreement tended to negate any compulsion to lie arising from condition assuring a shorter sentence if the testimony was of "value" or "benefit" to the government). It is also significant that the plea bargain was not conditioned upon a particular result, such as the indictments or convictions of his co-conspirators. See Moody, 778 F.2d at 1385 (finding no error in provision requiring that plea-bargained testimony "result[ ] in prosecutable cases" because such a provision did not require convictions or indictments). In light of the extensive cross-examination of Spanke regarding the plea bargain and the condition requiring truthful testimony in all procedures, the admission of Spanke's testimony did not deprive Cox of due process.
 
 
 43
 Accordingly, the judgment of the district court is AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 44
 Because I believe the trial court's limitation of Cox's cross-examination of Spanke constituted constitutional error, I dissent.
 
 
 45
 After determining that the trial court "deprived the defense of an opportunity to introduce valuable evidence," the majority nonetheless concludes that the excluded "information would have been largely cumulative in nature." With due respect to my able colleagues, I think they are closer to the mark in the former conclusion than in the latter. The excluded impeachment evidence was unique; it was the only information supporting an inference that Spanke himself may have killed the Yocums. The cross-examination, which the trial court did allow, on the terms of Spanke's plea bargain and the nature of his involvement in the conspiracy may fall under the general rubric of bias, but these matters do not lead as directly as the excluded evidence to the inference that Spanke's testimony was fabricated.
 
 
 46
 The majority seems to conclude that any extensive questioning as to bias satisfies the Sixth Amendment. However, that notion was rejected in Davis v. Alaska, 415 U.S. 308 (1974), the leading precedent in this area. In Davis, although the burglary defendant was allowed to question the main prosecution witness as to the discovery of the stolen property on the witness' land, the trial court excluded information that the witness was on probation for burglary. Rejecting the contention that the permitted cross-examination was adequate, the Court noted that "[w]hile counsel was permitted to ask [the witness] whether he was biased, counsel was unable to make a record from which to argue why [the witness] might have been biased." Id. at 318. Thus, Davis demonstrates that allowing some examination relating to bias does not justify the exclusion of separate, unique facts that also suggest untruthful testimony.
 
 
 47
 In this case, evidence that Spanke had previously shot someone for reasons relating to money is distinct from the facts of his plea bargain. The latter simply suggests the possibility of bias, while the former suggests a concrete reason for fabrication--that Spanke himself killed the Yocums. While I think the majority's interpretation of recent Supreme Court precedent as focusing on "prototypical" forms of bias is both confused and confusing, I know of no more "prototypical form of bias" than attempting to hide one's own guilt, particularly where the survival of one's plea bargain depends on such concealment. Under Davis, which remains controlling precedent, Cox was entitled to cross-examine Spanke as to each set of facts suggesting bias or dishonesty. The trial court's preclusion of one critical set of facts violated Cox's right to confront the witnesses against him.
 
 
 48
 Because I would hold that the error acknowledged by the majority is of constitutional magnitude, I must also decide whether the error was harmless. I have no difficulty in concluding the error was not harmless. Spanke was the prosecution's main witness; were Cox able to undermine significantly Spanke's credibility, the prosecution's likelihood of success would have been significantly diminished. Aside from some ambiguous statements by Cox to law enforcement officers and some more direct admissions to jailhouse informants, virtually all the evidence linking Cox to the conspiracy to murder the Yocums originated with Spanke. Thus, although the majority notes that Cox would have received a life sentence even if he had merely aided and abetted the murders, I am uncertain that a jury with significant doubts about the veracity of Spanke's testimony would have found Cox guilty of any role in the conspiracy. Therefore, "assuming that the damaging potential of the cross-examination was fully realized," I cannot "nonetheless say that the error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
 
 
 49
 I would reverse, and remand for issuance of the writ.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Citing People v. Hall, 718 P.2d 99 (Cal.1986), respondent argues that the intended cross-examination was not admissible as evidence to exculpate Cox. In Hall, the California Supreme Court held that evidence of third-party culpability is admissible if it raises a reasonable doubt of the defendant's guilt and there is direct or circumstantial evidence linking the third person to the actual perpetration of the crime. Id. at 833. We find it unnecessary to reach this issue, in light of our holding that the trial court's ruling on the grounds upon which it relied was erroneous. In any event, we note that Hall was decided one year after Cox's trial and thus could not have informed the trial court's decision
 
 
 [2]
 Cox urges us to remand the plea bargain claim to the district court because it dismissed the claim without making factual findings. Because his factual allegations, even if true, would not establish a denial of a federal constitutional right, no purpose would be served in remanding this issue