UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald Eddie MOODY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Howard George HOLLENBECK,
Defendant-Appellant.

Nos. 84–5379, 84–5380.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 4, 1985.

Decided Dec. 17, 1985.

As Amended March 11, 1986.

---

Stephen W. Peterson, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Peter Brown, Brown, Baron, Madden & Gailen, Beverly Hills, Cal., for defendant-appellant.

Before WALLACE, CANBY and BEEZER, Circuit Judges.

WALLACE, Circuit Judge:

Moody and Hollenbeck appeal their convictions for conspiracy to import a controlled substance, conspiracy to possess a controlled substance with intent to distribute, and conspiracy to travel in foreign commerce in aid of racketeering, in violation of 18 U.S.C. §§ 371, 1952(a)(3) and 21 U.S.C. §§ 846, 963. We have jurisdiction under 28 U.S.C. § 1291.

Moody and Hollenbeck argue on appeal that testimony of a coconspirator was improperly admitted, that portions of the grand jury testimony of several trial witnesses were improperly withheld from them in violation of the Jencks Act, 18 U.S.C. § 3500, that testimony of one government witness should not have been allowed because it was obtained pursuant to a plea bargain, and that they are victims of impermissibly selective prosecution. We affirm.

I

In 1972, a group known as the Coronado Company began smuggling controlled substances into the United States. We outlined the factual background of this opera-

tion in *United States v. Bibbero*, 749 F.2d 581, 582–83 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985) (*Bibbero* ). In 1979, Moody and Hollenbeck agreed with the Coronado Company to procure approximately two tons of Thai stick marijuana in Thailand and ship it to the United States in a Coronado Company vessel. Profits were to be divided equally between them and the Coronado Company. The contraband was smuggled successfully into the United States at a remote beach in Northern California, and distributed to Moody and Hollenbeck and distributors of the Coronado Company.

Later that year, a similar but larger smuggling operation was planned. On this occasion, the importation worked less smoothly, resulting in a loss of a substantial part of the six tons of Thai sticks. Moody and Hollenbeck recovered their $100,000 investment and, after discussions with the Coronado Company, received an additional $15,000.

Several members of the Coronado Company entered into plea agreements and testified at the trial of Moody and Hollenbeck. The questions on appeal relate to aspects of these witnesses' testimony.

## II

Lahodny was one of the main figures in the Coronado Company. Vaughan had substantial responsibility in the company. Over objection, Vaughan was allowed to testify that Lahodny stated that Moody and Hollenbeck would procure the marijuana in Thailand.

■ Moody and Hollenbeck do not argue that the conspiracy was not proven nor that the evidence admitted did not prove their connection with it. Rather, they contend that this evidence should have been excluded as hearsay because it was not made in furtherance of the conspiracy. The ruling of the district judge that it was made in furtherance of the conspiracy must be upheld unless clearly erroneous. *United States v. Silverman*, 771 F.2d 1193, 1199 (9th Cir.1985); *see United States v. McConney*, 728 F.2d 1195, 1202–04 (9th

Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (*McConney* ).

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is "offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Lahodny was certainly a central member of the Coronado Company. At trial, counsel for Moody and Hollenbeck referred to Vaughan as one of the "big people" in the Coronado Company conspiracy. Moody and Hollenbeck acknowledge in their brief that Vaughan was regarded as a "headmaster of the Coronado Company and was in charge of operations of the off-loading of the marijuana from the boats onto the shore." They also admit that information usually was shared between the conspirators only on a "need-to-know" basis. Nevertheless they would have us conclude that statements made by Lahodny to Vaughan, explaining that they would journey to Thailand to obtain marijuana for the Coronado Company conspiracy, were not made in furtherance of the conspiracy.

Moody and Hollenbeck rely heavily on *Bibbero,* where we held that the district court erred in admitting testimony regarding the statement of a coconspirator associated with the Coronado Company. Coconspirator Logie testified that Vaughan had told him that certain marijuana he observed being loaded on a truck belonged to the defendant Bibbero. We held Vaughan's statement inadmissible as hearsay because it was not made to further the conspiracy. 749 F.2d at 583.

The present case is sharply distinguishable. In *Bibbero* the coconspirator's statement amounted to "mere conversation" not in furtherance of the conspiracy. 749 F.2d at 583. The statement was made to Logie, who, although he was the ship-to-shore off-loading equipment manager for one of the Coronado Company conspiracy's smuggling operations, had a very limited role in subsequent aspects of the operation. We emphasized that "[b]ecause of Logie's limited re-

sponsibilities as equipment manager, Vaughan's statement of ownership was immaterial to him"—and of no consequence in the furtherance of the conspiracy. 749 F.2d at 584.

■ By contrast, Lahodny's statement to Vaughan was made to one who possessed a substantial interest in the continuing operation of the conspiracy and who participated in the planning stages of its marijuana smuggling. While Logie was paid a flat rate for his limited services, Vaughan possessed an 11% interest in the net profits of Coronado Company smuggling operations. According to uncontradicted testimony, Vaughan helped to determine questions as important as where the marijuana would be shipped. We cannot accept the contention that Lahodny engaged in idle conversation when he told Vaughan that Moody and Hollenbeck were the parties who, according to plan, would travel to Thailand to procure the marijuana for the Company to smuggle.

■ In their reply brief, Moody and Hollenbeck raise an additional ground for excluding the challenged statement: the government "has not overcome the Sixth Amendment confrontation issue." This issue was not raised at trial. We deem it waived, and will not consider it. *See, e.g., United States v. Coleman,* 707 F.2d 374, 376 (9th Cir.), *cert. denied,* 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983); *United States v. Roberts,* 583 F.2d 1173, 1175 (10th Cir.1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979).

### III

Relying again on *Bibbero,* Moody and Hollenbeck contend next that the trial court violated the Jencks Act, 18 U.S.C. § 3500(c), by excising portions of grand jury testimony given by witnesses who testified against them at trial. The Jencks Act provides in part that

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall

order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery *the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness.* With such material excised, the court shall then direct delivery of such statement to the defendant for his use.

18 U.S.C. § 3500(c) (emphasis added). Jencks Act determinations are reviewed for an abuse of discretion. *United States v. Miller,* 771 F.2d 1219, 1229 (9th Cir.1985) (*Miller*); *United States v. Cowley,* 720 F.2d 1037, 1040 n. 1 (9th Cir.1983).

In *Bibbero,* the government produced versions of material subject to the Jencks Act only after making its own deletions of purportedly irrelevant material. We reversed because the determination of relevancy had not been made by the district court, as required under the statute. 749 F.2d at 585; *see also Miller,* 771 F.2d at 1229–32. The case before us is different. Here, the determination to excise portions of the grand jury testimony of government witnesses was made by the district court. In addition, the district court in this case reevaluated those excisions in light of their relationship to testimony as the trial developed.

■ We need not consider the related argument of Moody and Hollenbeck that the district judge applied an incorrect standard in determining what portions of the grand jury testimony should be excised. The Act provides that

If ... any portion of such statement is withheld from the defendant *and the defendant objects to such withholding,* ... the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the holding of the trial judge.

18 U.S.C. § 3500(c) (emphasis added). The Act clearly contemplates appellate review only if the defendant first objects before the district court. *See Ogden v. United*

*States,* 303 F.2d 724, 733 (9th Cir.1962), *cert. denied on later appeal,* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964). The government states that no such timely objection was made. Moody and Hollenbeck do not contend otherwise. Thus, because "the defendants failed to urge the asserted error at a time when the court could have made the necessary correction, the contention comes too late on appeal to show reversible error." *United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 493 (2d Cir.1961) (on denial of rehearing).

## IV

■ We next review de novo, *see McConney,* 728 F.2d at 1201, Moody and Hollenbeck's contention that plea-bargained testimony should be excluded on the ground that plea bargain agreements are inherently coercive. Villar, one of the Coronado Company conspirators, entered into a plea bargain whereby he agreed to testify against his coconspirators in return for leniency. It is argued that because Villar faced the possibility of a long prison term for conduct that was much more culpable than that of Moody and Hollenbeck, we should, pursuant to *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), hold admission of his testimony in evidence to be reversible error.

We conclude that the government's practice of making plea bargains contingent on truthful testimony or other cooperation does not require invocation of *McNabb.* Indeed, a proper respect for the other branches of government demands that we interfere only in those relatively rare situations where there is " 'a clear basis in fact and law for doing so.' " *United States v. Gatto,* 763 F.2d 1040, 1046 (9th Cir.1985), *quoting United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). Moody and Hollenbeck have shown us no such basis in fact and law to justify the new limitations they would have us place on executive discretion. That Villar might have faced substantial sentences, or that he might, in the grand scheme of things, be more culpable than Moody and Hollenbeck,

does not change our analysis. The plea bargain with Villar may have been the most effective way for the government to obtain testimony against the rest of the Coronado Company and its associates in crime.

Moody and Hollenbeck argue that Villar faced implicit coercion in the possibility that he might have to spend a long time in prison for his crimes. They contend that his testimony therefore is analogous to a coerced confession, and that it should be excluded for the same reasons that we exclude involuntary confessions. *Cf. Payne v. Arkansas,* 356 U.S. 560, 562, 78 S.Ct. 844, 847, 2 L.Ed.2d 975 (1958) (dealing with coerced confession). One problem with this argument is that it fails to give proper weight to the role of cross-examination in our system of seeking truth. "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966). It seems to us that this principle is properly applicable to the testimony of one who stands to benefit from a plea bargain, and no cases have been cited to the contrary.

Testimony pursuant to a plea bargain agreement differs from coerced confessions. Where the damning words come from a defendant's own mouth, the jury is likely to rely on them despite evidence that the confession was coerced. Because the danger of prejudice is great, it is the court's duty to see that such confessions are excluded. *See generally Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Examination of the defendant on the stand is an insufficient safeguard against this danger. His testimony that his earlier confession was coerced may appear to be motivated by a desire to avoid conviction. In contrast, evidence that testimony is given pursuant to a plea bargain casts doubt on the witness's statements that tend to show

a defendant's guilt—doubt which defense counsel can develop on cross-examination. Indeed, counsel in this case focused on the implications of the plea bargain during cross-examination. The contention of Moody and Hollenbeck that cross-examination is no more effective with respect to testing the truth of plea-bargained testimony than it is with respect to testing the truth of a coerced confession is unfounded.

■ Whatever "coercion" may be involved in the properly monitored plea bargaining process, it is not the kind of coercion that leads to objectionable, involuntary confessions. *See Bordenkircher v. Hayes*, 434 U.S. 357, 361–65, 98 S.Ct. 663, 666–69, 54 L.Ed.2d 604 (1978); *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). Indeed, another circuit has held that plea-bargained testimony given before a grand jury may even be admitted in evidence at trial against the testifying party, if he withdraws from the plea bargain agreement. *United States v. Davis*, 617 F.2d 677, 682–87 (D.C.Cir.1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980). To make exceptions merely because the beneficiary of a plea bargain agreement faces the possibility of a lengthy sentence would lead to the anomalous result that plea-bargained testimony would be prohibited where it is most needed—where a group of conspirators has committed serious crimes.

■ Moody and Hollenbeck also argue that the specific wording of Villar's plea bargain agreement encouraged Villar to lie. Plea bargains often are contingent upon an agreement that the beneficiary will testify against others. *See, e.g., United States v. Nation*, 701 F.2d 31 (5th Cir.), *cert. denied*, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 158 (1983). The wording of Villar's plea bargain does nothing more than state this assumption. The plea bargain's term that Vaughan's cooperation must "result[ ] in prosecutable cases as represented" might have been worded better. Under the circumstances, however, we cannot agree with Moody and Hollenbeck that those words could be construed to require *convictions* or *indictments* as a result of

Vaughan's testimony. The agreement required "truthful and complete" testimony. *United States v. Dailey*, 759 F.2d 192, 197 (1st Cir.1985) (requirement of "complete and honest testimony" negates inference of inducement to testify falsely). Moody and Hollenbeck were able freely to seek to impeach the credibility of Villar's testimony on the ground that the plea bargain might have encouraged him to lie. There was no legal error.

V

Finally, Moody and Hollenbeck argue that in affording a plea bargain to Villar, and not to them, the government engaged in impermissible discriminatory prosecution. Contending that Villar was more culpable, they apparently would have us conclude that Villar was thus more prosecutable and, therefore, that any decision to be more lenient with Villar was impermissible.

The appropriate standard of review for discriminatory prosecution determinations is somewhat ambiguous. Several decisions appear to have applied an "abuse of discretion" standard, *e.g., United States v. Griffin*, 617 F.2d 1342, 1349 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980); *United States v. DeMarco*, 550 F.2d 1224, 1228 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977), while others have apparently utilized a "clearly erroneous" standard. *E.g., United States v. Wayte*, 710 F.2d 1385, 1388 (9th Cir.1983), *aff'd*, —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Thurnhuber*, 572 F.2d 1307, 1311 (9th Cir.1977). Two recent cases have avoided deciding between the abuse of discretion and clearly erroneous formulations, pointing out that neither was satisfied on the records before those courts. *United States v. Stewart*, 770 F.2d 825, 829 n. 2 (9th Cir.1985); *United States v. Gann*, 732 F.2d 714, 724 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). Because we find neither clear error nor abuse of discretion, we need not decide which of these deferential standards is the correct one.

■ There is no constitutional right to a plea bargain, and the decision whether to

offer a plea bargain is a matter of prosecutorial discretion. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Moody and Hollenbeck rely on *United States v. Bell*, 506 F.2d 207, 221–22 (D.C.Cir.1974) (*Bell*), to argue that discriminatory plea bargains may violate the fifth amendment right to equal protection of the laws. But the court in *Bell* stated:

> Prosecutorial discretion in law enforcement ... "is by its very nature exceedingly broad." And "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," but only so when "the selection [is] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Id.* at 222 (footnotes omitted), *quoting Washington v. United States*, 401 F.2d 915, 925 (D.C.Cir.1968) (per curiam), *and Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). We have held that a defendant who relies on contentions of impermissibly selective prosecution must demonstrate "that he was selected for prosecution on the basis of an impermissible ground such as race, religion or exercise of the constitutional rights." *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir.1984) (per curiam) (*McWilliams*); *see also Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985), *aff'g*, 710 F.2d 1385 (9th Cir.1983); *Adame-Hernandez v. INS*, 769 F.2d 1387, 1388 (9th Cir.1985) (per curiam); *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir.1972). Similarly, vindictive prosecution "usually involves retaliatory imposition of additional penalties against a defendant who, after indictment, exercises some legal right" related to the trial process. *McWilliams*, 730 F.2d at 1221. "[T]o sustain such a claim, the defendant must show vindictiveness on the part of those who made the charging decision." *Id.*

■ No showing has been made in this case that the government was motivated by considerations of race, religion, or any other impermissible ground. Moody and Hol-

lenbeck observe that they "decided to exercise their right to a jury trial, [and] that the Government did not offer [them] the opportunity to enter into a plea bargain such as that offered" to supposedly more culpable coconspirators. Yet they have shown no connection whatever between their choice of a jury trial, and the motivation of the prosecutors in choosing to strike plea bargains with other coconspirators. Their "assertions are too vague to sustain [their] burden of coming forward with some evidence to lend substance to [their] claim of vindictiveness." *United States v. Heldt*, 745 F.2d 1275, 1281 (9th Cir.1984).

AFFIRMED.