62 F.3d 1426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Denise Renee DOHM, Defendant-Appellant.
 No. 94-10409.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1995.
Decided Aug. 3, 1995.
 
 Before: HUG, ALARCON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Denise Dohm (Dohm) appeals from a judgment of conviction following trial by jury. Dohm argues that the district court erred in denying her motion to dismiss based on her claim that the Government acted vindictively by withdrawing a misdemeanor plea offer after learning that she intended to file a motion to suppress. She also contends that the Government engaged in vindictive prosecution by adding additional felony charges to the superseding indictment after she filed her suppression motion.
 
 
 3
 We affirm because Dohm has failed to demonstrate that she was exposed to a more severe punishment after she filed her motion to suppress.
 
 I.
 
 4
 The pertinent facts are not in dispute. Dohm was arrested on January 28, 1993. On that date, Dohm passed counterfeit $20.00 notes at a Thrifty Store and a 7-11 store. She attempted to pass a counterfeit note at Faststop Liquors.
 
 
 5
 Officer Michael DiLorenzo of the Union City Police Department stopped the car in which Dohm was the passenger and Phillip Beckett was the driver. The car matched the description of the vehicle used by the individual who had passed the counterfeit notes. A witness from Faststop Liquors identified Dohm as the person who had attempted to pass a counterfeit $20.00 note at Faststop Liquors. Dohm was arrested by Officer DiLorenzo. While en route to the police station, Dohm stuffed a handful of counterfeit bills behind the rear seat of the patrol car.
 
 
 6
 On July 28, 1993, the Government filed an indictment that charged Dohm with knowingly possessing counterfeit $20.00 notes in violation of 18 U.S.C. Sec. 472 (1988). The punishment for a violation of section 472 is a fine, or imprisonment for not more than fifteen years, or both.
 
 
 7
 In September of 1993, Assistant United States Attorney Robin Harris (the prosecutor) offered Dohm an inducement to enter a guilty plea. Dohm's counsel was informed that Dohm would be allowed to plead guilty to a misdemeanor if she agreed to testify against Beckett. John Philipsborn, Dohm's initial counsel, communicated the offer to her. Shortly thereafter, Mr. Philipsborn withdrew from the case.
 
 
 8
 The prosecutor made the same offer to Peter Goodman, Dohm's second attorney, on October 20, 1993. On October 27, 1993, Mr. Goodman informed the prosecutor that he was considering moving to suppress statements made by Dohm to various law enforcement officers. The prosecutor responded, "If I have to do any work on this case, the misdemeanor offer will be withdrawn."
 
 
 9
 The prosecutor notified Mr. Goodman on November 8, 1993, that Beckett had entered a plea agreement. The prosecutor stated that the offer to permit Dohm to plead guilty to a misdemeanor was still open. Mr. Goodman replied that he was still contemplating filing a motion to suppress. The prosecutor responded that the misdemeanor offer would be withdrawn if the case became too "complicated."
 
 
 10
 The matter was scheduled for a status conference before the trial judge on November 15, 1993. Shortly before the matter was called, Mr. Goodman again informed the prosecutor that a motion to suppress would probably be filed. The prosecutor indicated that if the case were to be "litigated," Dohm would be prosecuted on the felony charge in the original indictment. During the status conference, the trial judge ordered that any motions be filed by November 24, 1993.
 
 
 11
 On the same date as the status conference, the prosecutor met with her supervisor. The prosecutor informed her supervisor that Dohm's case would probably go to trial. The prosecutor and her supervisor determined that each act of passing counterfeit notes, or the attempt to do so, had to be presented to the trier of fact to meet the prosecution's burden of persuading the jury that Dohm knew the bills she hid in the patrol car were counterfeit. They also discussed the possibility that Dohm might challenge the admissibility of evidence of prior acts of misconduct under Rule 404(b) of the Federal Rules of Evidence. To avoid this problem, they concluded that a superseding indictment should be filed charging each act of passing counterfeit notes, or the attempt to do so, separately.
 
 
 12
 On November 16, 1993, the prosecutor wrote Mr. Goodman a letter indicating that the misdemeanor offer would expire on November 24, 1993, or upon the filing of the motion to suppress, whichever event occurred first. On November 24, 1993, Mr. Goodman informed the prosecutor that he would be filing a motion to suppress. The prosecutor then told Mr. Goodman that she would seek a superseding indictment, charging each act of passing counterfeit notes, or the attempt to do so, individually.
 
 
 13
 On December 1, 1993, the prosecutor filed a superseding indictment, which charged Dohm with the following crimes:
 
 
 14
 Count 1: Dohm knowingly passed and attempted to pass a counterfeit $20.00 note at Thrifty's Store, 31091 Mission Blvd., Hayward, CA, in violation of 18 U.S.C. Sec. 472 (1988);
 
 
 15
 Count 2: Dohm knowingly attempted to pass a counterfeit $20.00 note at Faststop Liquors, 33103 Mission Blvd., Hayward, CA, in violation of 18 U.S.C. Sec. 472;
 
 
 16
 Count 3: Dohm knowingly passed and attempted to pass a counterfeit $20.00 note at the 7-11 Store, 915 Whipple Road, Hayward, CA, in violation of 18 U.S.C. Sec. 472; and
 
 
 17
 Count 4: Dohm knowingly kept in her possession $640.00 in counterfeit $20.00 notes, in violation of 18 U.S.C. Sec. 472.
 
 
 18
 Dohm moved to suppress statements she made to law enforcement officers and to dismiss the superseding indictment as a product of vindictive prosecution. The district court held a two-day evidentiary hearing. The court denied both motions.
 
 
 19
 A jury trial commenced on March 22, 1994. On March 28, 1994, the jury found Dohm guilty of counts three and four of the superseding indictment. The jury was unable to reach verdicts regarding counts one and two.
 
 
 20
 On August 3, 1994, Dohm was sentenced to three years probation, including four months in a home detention program. On the same date, the court dismissed counts one and two of the superseding indictment.
 
 II.
 
 21
 The Supreme Court has instructed that the Due Process Clause prohibits vindictive prosecution. North Carolina v. Pearce, 395 U.S. 711, 725 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794 (1989); Blackledge v. Perry, 417 U.S. 21, 28-29 (1974). A prosecutor acts vindictively if he or she files more serious charges or seeks the imposition of a harsher sentence to punish a defendant who exercises a constitutional, statutory, or procedural right. Pearce, 395 U.S. at 725; Blackledge, 417 U.S. at 28-29; Bordenkircher v. Hayes, 434 U.S. 357, 362-63 (1978); see also United States v. Kinsey, 994 F.2d 699, 702 (9th Cir.1993); United States v. Garza-Juarez, 992 F.2d 896, 905 (9th Cir.1993), cert. denied, 114 S.Ct. 724 (1994); United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir.1982).
 
 
 22
 Dohm argues that the Government acted vindictively by withdrawing the misdemeanor plea offer, after learning that she intended to file her motion to suppress, and by filing additional charges after she filed her suppression motion. The standard of review for a contention that the Government was guilty of vindictive prosecution is unsettled in this circuit. See United States v. Montoya, 45 F.3d 1286, 1291 (9th Cir.1995), petition for cert. filed, (U.S. Jun 2, 1995) (No. 94-1967) ("The court has variously applied abuse of discretion, clearly erroneous, and de novo standards.").
 
 
 23
 An intra-circuit conflict can only be resolved through en banc proceedings. United States v. Sotelo-Murillo, 887 F.2d 176, 179 (9th Cir.1989) (citations omitted). If the district court's conclusion can be upheld under any standard, the reviewing court need not reach the issue of which standard of review applies. United States v. Manarite, 44 F.3d 1407, 1417 n. 16 (9th Cir.1995), petition for cert. filed, 63 U.S.L.W. 3756 (U.S. Apr 6, 1995) (No. 94-1641). Because we conclude that the district court's ruling can be upheld under the de novo standard of review, we need not consider whether a more deferential standard of review is applicable.
 
 
 24
 As a threshold issue, we must determine whether the superseding indictment increased the severity of the charges or exposed Dohm to a more serious punishment. "[T]he doctrine of vindictive prosecution does not apply, when ... there has been no increase in the severity of the charge or the sentence imposed." Kinsey, 994 F.2d at 701.
 
 
 25
 Dohm argues that after the withdrawal of the misdemeanor offer, she was confronted with the felony count in the original indictment. Thus, Dohm contends she was faced with a more severe charge than that contained in the plea agreement because she persisted in her decision to challenge the admissibility of her statements to the police. This argument ignores the principle that a defendant has no right to a plea bargain. United States v. Moody, 778 F.2d 1380, 1385 (9th Cir.1985). Accordingly, the Government was free to withdraw its misdemeanor offer prior to its acceptance. See e.g., United States v. Savage, 978 F.2d 1136, 1138 (9th Cir.1992), cert. denied, 113 S.Ct. 1613 (1993) (citations omitted) ("[E]ither party [is] entitled to modify its position and even withdraw its consent to [a plea bargain] until the plea is tendered and the bargain as it then exists is accepted by the court.").
 
 
 26
 The additional charges in the superseding indictment did not increase the severity of the charges against Dohm because the original indictment and the superseding indictment charged Dohm with violations of 18 U.S.C. Sec. 472. Similarly, the charges in the superseding indictment did not expose Dohm to a longer sentence than she faced under the charge in the initial indictment. All of the counts in the superseding indictment were grouped together. See United States Sentencing Commission, Guidelines Manual, Sec. 2B5.1; Sec. 3D1.2(d) (Nov. 1993). The total amount of counterfeit notes Dohm was charged with passing or attempting to pass was $700.00. Therefore, Dohm's base offense level did not change as a result of the additional charges in the superseding indictment because the total amount of counterfeit money at issue was less than $2,000.00. Id. at 2B5.1.
 
 
 27
 Dohm argues that even though the superseding indictment did not subject her to more serious charges or to a more severe sentence, its filing prejudiced her because the "practical effect of adding three new charges was to make the case more difficult to defend and to increase the likelihood of a compromise verdict." Assuming that these theories are valid, they do not demonstrate that the prosecutor sought to punish the defendant for filing a motion to suppress. The superseding indictment did not increase the severity of the charge or affect the length of her sentence. Kinsey, 994 F.2d at 702.
 
 
 28
 Dohm further argues that we must consider the collateral consequences of the filing of the superseding indictment in determining whether the prosecutor acted vindictively. Dohm maintains that the filing of additional charges exposed her to the possibility of multiple felony convictions. According to Dohm, there is a greater stigma associated with multiple felony convictions, than with a single felony conviction, "in terms of future employment, travel, voting and the use of such convictions in future court proceedings to impeach credibility or to enhance a subsequent sentence should recidivism occur." Dohm relies on United States v. Palomba, 31 F.3d 1456 (9th Cir.1994); United States v. De Bright, 730 F.2d 1255 (9th Cir.1984) (en banc), to support this contention. Dohm's reliance on these cases is misplaced. Neither involves the defense of vindictive prosecution.
 
 
 29
 In Palomba, we were confronted with the question whether defense counsel rendered ineffective assistance of counsel. Id. at 1460-63. In De Bright, we rejected the use of the concurrent sentence doctrine. Id. at 1256. The fact that collateral consequences may flow from the filing of additional charges does not, standing alone, demonstrate that the prosecutor acted vindictively. Kinsey, 994 F.2d at 702.
 
 
 30
 Dohm maintains that condoning a prosecutor's threats to withdraw a plea bargain if a defendant insists on asserting a pretrial challenge will chill other similarly situated defendants from asserting their constitutional rights. The Supreme Court disposed of this contention in Bordenkircher as follows:
 
 
 31
 While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"--and permissible--"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." ... It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.
 
 
 32
 Bordenkircher, 434 U.S. at 364 (citations ommitted).
 
 A.
 
 33
 Dohm asserts that the prosecutor's threats to withdraw the misdemeanor plea bargain offer are sufficient to prove actual vindictive prosecution because the Government "drew an unmistakable and purposeful link between the misdemeanor offer and the exercise of [Dohm's] ... right to challenge the admissibility of her statements." Actual vindictiveness is established when the defendant provides direct evidence of an "expressed hostility or threat" to the defendant for exercising a statutory, procedural, or constitutional right. United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir.1982).
 
 
 34
 The prosecutor's offer to accept a plea to a misdemeanor was an attempt to negotiate a disposition that would avoid a trial. The Supreme Court has recognized that "[p]lea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." Bordenkircher, 434 U.S. at 363 (citations omitted). In Bordenkircher, the Supreme Court held that a threat to re-indict a defendant on more serious charges if he or she pleads not guilty does not establish that the prosecutor engaged in vindictive prosecution. Id. The court instructed that "in the 'give-and-take' of plea bargaining, there is no ... element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Id.
 
 
 35
 Dohm argues that there are fundamental differences between the facts of the instant action and the facts in Bordenkircher. According to Dohm, the defendant in Bordenkircher opted for a jury trial, which necessarily meant that he rejected the plea offer. In contrast, Dohm asserts that she did not reject the misdemeanor offer. Instead, Dohm contends that the plea offer was withdrawn when she filed her suppression motion.
 
 
 36
 We do not agree with Dohm's position that her failure to reject the plea offer makes this action distinguishable from Bordenkircher. The Supreme Court's decision in Bordenkircher was not based upon the fact that the defendant expressly rejected the plea offer. Instead, it was premised upon the Court's determination that in the context of plea bargaining, a prosecution is not vindictive if the defendant is free to accept or reject a plea offer. Accordingly, Dohm's attempt to distinguish Bordenkircher on the basis that she did not explicitly reject the misdemeanor offer lacks merit.
 
 
 37
 Dohm also maintains that "[t]he fact that the prosecutor could have refrained from making any offer does not mean that once made, its terms could be altered." As discussed supra, Dohm had no right to the misdemeanor offer. Moody, 778 F.2d at 1385. Like any other contractual offer, it could be altered or withdrawn prior to its acceptance. Savage, 978 F.2d at 1138; accord United States v. Papaleo, 853 F.2d 16, 19-20 (1st Cir.1988) (holding that until a defendant actually pleads guilty and the court accepts the plea, the government is free to withdraw a plea offer).
 
 
 38
 Dohm further contends that in Bordenkircher, the defendant was fully aware of the risk he was taking in rejecting the offer. In contrast, Dohm asserts she was unaware of the true consequences of proceeding with her motion; i.e., that the Government would seek a superseding indictment. The fact Mr. Goodman was not informed that a superseding indictment would be filed until after he told the prosecutor that he would be filing the suppression motion does not advance Dohm's cause. In United States v. Goodwin, 457 U.S. 368 (1982), the Supreme Court held that the filing of an indictment with more severe charges after failed plea negotiations does not demonstrate vindictive prosecution. Id. at 384. As in this case, the prosecutor in Goodwin did not inform the defendant that more serious charges would be sought if he rejected the plea bargain. Id. at 371.
 
 
 39
 In this matter, the prosecutor offered the misdemeanor disposition in exchange for finality, and for saving the time and expense of further litigation. The Supreme Court has recognized the importance of plea bargaining to the conservation of limited Governmental resources:
 
 
 40
 The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal case were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.
 
 
 41
 Santobello v. New York, 404 U.S. 257, 260 (1971). Once Dohm filed her motion for an evidentiary hearing regarding the police interrogation, the Government was faced with the burden of litigating additional issues, which eliminated the incentive to offer Dohm a more lenient sentence.
 
 
 42
 Dohm argues that United States v. DeMarco, 550 F.2d 1224 (9th Cir.), cert. denied, 434 U.S. 827 (1977), and United States v. Hollywood Motor Car Co., 646 F.2d 384 (9th Cir.1981), rev'd on other grounds, 458 U.S. 263 (1982), support her contention that the Government's actions were vindictive. This contention lacks merit. In DeMarco, the Government threatened to obtain a second indictment to deter the defendant from moving for a change of venue. Id. at 1226. We noted that "it was not constitutionally permissible for the Government to threaten to 'up the ante' to discourage DeMarco from exercising his venue right; a fortiori, it was constitutionally impermissible to follow up the threat with the California indictment." Id. at 1227-28. Accordingly, we held that the Government acted vindictively in obtaining the second indictment. Id. at 1228. Similarly, in Hollywood Motor Car Co., we found actual vindictiveness because the prosecutor filed additional charges when the defendant exercised his right to change venue. Id. at 388. In this matter, the prosecutor did not threaten to "up the ante" to discourage Dohm from filing her motion to suppress. The additional charges were not filed until after Dohm filed her motion to suppress. As explained above, Dohm was not subjected to greater punishment because of the filing of the additional charges. We conclude that Dohm has failed to demonstrate actual vindictiveness.
 
 B.
 
 43
 Alternatively, Dohm maintains that the record supports a conclusion that the prosecutor's actions were presumptively vindictive. She points out that the Government withdrew the plea offer and filed the superseding indictment in response to her motion to suppress. The totality of the circumstances surrounding the prosecutorial decision at issue must be examined to determine whether the facts give rise to a presumption of vindictiveness. United States v. Griffin, 617 F.2d 1342, 1347 (9th Cir.), cert. denied, 449 U.S. 863 (1980).
 
 
 44
 i.
 
 
 45
 Dohm contends that the Government's withdrawal of the misdemeanor offer was presumptively vindictive because it was linked to the filing of the suppression motion. To support this proposition, Dohm cites United States v. Garza-Juarez, 992 F.2d 896 (9th Cir.1993), cert. denied, 114 S.Ct. 724 (1994). In Garza-Juarez, the Government responded to defense motions to dismiss by offering the defendants a "package deal"; the Government would not file additional charges if the defendants pled guilty. Id. at 905. The Government also stated that the package deal would be withdrawn if the defendants proceeded with their motions to dismiss. Id. The defendants rejected the plea offer and filed their motions to dismiss. Id. Thereafter, the Government obtained a superseding indictment containing three additional counts against one of the defendants. Id.
 
 
 46
 In Garza-Juarez, we noted that it was permissible under Bordenkircher to threaten to bring more serious charges if the defendants pled not guilty. Id. at 906. We were troubled, however, by the Government's threat to withdraw the package deal if the defendants moved to dismiss. Id. We concluded that the threat to withdraw the package deal and the filing of the superseding indictment created a presumption of vindictiveness. Id. at 907.
 
 
 47
 The facts of this case are distinguishable from those in Garza-Juarez. In Garza-Juarez, we found that the double barreled threat to withdraw the package deal and to file additional charges in a superseding indictment if the defendants pursued their pretrial motion, chilled the defendants' constitutional rights. Id. at 906. The prosecutor in the instant matter did not threaten to file additional charges if Dohm pursued her suppression motion. Rather, Dohm was merely informed that the misdemeanor offer would be withdrawn if she filed a motion to suppress her statements. In contrast to Garza-Juarez, in this action, there was no threat to increase the severity of the charges if Dohm chose to pursue a pre-trial motion.
 
 
 48
 Dohm maintains that Garza-Juarez is applicable even though the prosecutor "did not threaten to file a superseding indictment if [Dohm] did not accept the offer, [because] that was clearly what she intended to do after the meeting with her supervisor on November 15, 1993." Dohm does not explain how a prosecutor's uncommunicated intent to file additional charges can have a chilling effect on the filing of a pretrial motion. Garza-Juarez does not support this contention.
 
 
 49
 ii.
 
 
 50
 Dohm argues that North Carolina v. Pearce, 395 U.S. 711 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794 (1989); and Blackledge v. Perry, 417 U.S. 21 (1974), support her theory that the filing of the superseding indictment was presumptively vindictive. In Pearce, the Supreme Court held that there was a presumption of vindictiveness when a defendant received a harsher sentence after retrial, following a successful challenge to his conviction. Pearce, 395 U.S. at 723-24. The Court extended this holding in Blackledge. Blackledge, 417 U.S. at 28-29. In that matter, the Court held that a prosecutor engaged in vindictive prosecution when a previously convicted defendant was re-indicted on more serious charges after asserting his right to appeal. Id. These cases have no application to charging decisions made in the context of plea negotiations.
 
 
 51
 In Bordenkircher, 434 U.S. 357, the Supreme Court distinguished Pearce and Blackledge as follows:
 
 
 52
 In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction--a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power."
 
 
 53
 Id. at 362 (citations omitted) (emphasis added). Further, in Goodwin, 457 U.S. 368, the Supreme Court instructed as follows:
 
 
 54
 [A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence ... It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.... The possibility that a prosecutor would respond to a defendant's pretrial demand ... by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so unlikely that a presumption of vindictiveness is not warranted.
 
 
 55
 Id. at 381-84 (emphasis added). Accord United States v. Sinigaglio, 942 F.2d 581, 584 (9th Cir.1991) (citations omitted) ("When increased charges are filed in the routine course of prosecutorial review ... there is no realistic likelihood of prosecutorial abuse, and therefore no appearance of vindictive prosecution arises merely because the prosecutor's action was taken after a defense right was exercised.").
 
 
 56
 It is beyond dispute that "a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial." Goodwin, 475 U.S. at 380. Similarly, "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." Id. (emphasis added). After learning that Dohm's case would go to trial, the prosecutor and her supervisor discussed the possible evidentiary problems that could arise. To circumvent Dohm's potential challenge to the evidence, the prosecutor filed the superseding indictment. Dohm has failed to demonstrate that a presumption of vindictive prosecution is applicable.
 
 
 57
 iii.
 
 
 58
 We are persuaded from our independent review of the record that the decision of the prosecutor to file the additional charges in this matter was not motivated by a desire to punish Dohm for exercising her constitutional rights. The uncontradicted evidence demonstrates that the prosecutor filed additional charges to ensure that evidence necessary to meet the Government's burden of persuasion would be heard by the jury.
 
 
 59
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3