**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

vs.

JOHN PATRICK PROCTOR,

    Defendant-Appellant.

No. 97-5242
(D.C. No. 97-CR-22-K)
(N.D. Okla.)

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

vs.

JILL ANN PROCTOR,

    Defendant-Appellant.

No. 97-5246
(D.C. No. 97-CR-22-K)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

In these appeals, John Patrick Proctor and Jill Ann Proctor appeal their

convictions and sentences for willfully filing a false tax return in violation of 26

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 7206(1). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

Background

The Proctors are the sole stockholders of their business, Ace Glass, Inc. ("Ace"). During the years 1990, 1991, and 1992, Ace had four sources of income: commercial sales, residential sales, over-the-counter sales, and subtenant rental income. However, only commercial sales were reflected on the corporate books. The other three sources of income, according to trial evidence, amounted to over $246,000. There was evidence at trial that the Proctors used some of that income to make personal car payments as well as paying overtime in cash to employees of Ace. The jury convicted them and the district court found unreported personal income of over $246,000 for sentencing purposes. On appeal, the Proctors argue that there was insufficient evidence to convict them, and that the district court erred in (1) excluding testimony from a state district attorney; (2) failing to provide the Proctors with Jencks materials from the IRS investigative agent's report; (3) allowing two government witnesses to testify as experts; (4) its jury instruction on materiality and in not giving an instruction on substantiality; (5) its application of the Sentencing Guidelines in its findings as to the amount of tax loss to the government and an obstruction of justice enhancement; and (6) denying a motion to appeal in forma pauperis and for

appointment of counsel.

## Discussion

### I.

The Proctors first argue that the evidence was insufficient to support their convictions. In addressing this claim, we review the record de novo. See United States v. Wolny, 133 F.3d 758, 760 (10th Cir. 1998). There is sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The Proctors claim that the evidence merely dealt with their business practices and that it failed to show that their personal tax returns were materially false. The evidence included unrecorded residential sales receipts totaling $153,068.49, unrecorded over-the-counter sales receipts totaling $41,849.57, and unrecorded subtenant rental income of $14,400. In addition, the evidence included 175 checks made out to Ace that were cashed by the Proctors or their bookkeeper, Susan Elliott. Although it is undisputed that some of this cash was used to pay employee overtime, there was evidence that the Proctors used some of the proceeds to make personal car payments and that they took money from the cash register. 7 R. at 133-34, 167. This income was not reported on the Proctors' personal income tax returns.

The Proctors defended on the basis that Ms. Elliott, the bookkeeper, who testified for the government at trial, embezzled the funds. Although evidence was presented that Ms. Elliott was awaiting trial on embezzlement charges initiated by the Proctors, the jury and district court chose to believe her version of events rather than that presented by the Proctors.

We conclude that the evidence regarding the personal car payments and taking money from the cash register is sufficient to convict the Proctors. However, we note that the government's theory in this case seemed to be that, once the Proctors cashed a corporate check, the money became income to them. This is untenable. Had the evidence only shown that the checks were cashed and used for corporate liabilities, such as paying overtime to employees, it would have been insufficient to predicate the charges of wilfully filing a false personal income tax return. The Proctors were corporate officers and, to the extent that money was used to pay overtime, were acting merely as conduits in cashing the checks for corporate purposes.

## II.

The Proctors next claim that the district court erred in excluding testimony from Rick Esser, a state district attorney, who was involved with the embezzlement prosecution of Susan Elliott. The district court's decision to exclude this evidence is reviewed for abuse of discretion. See Osteguin v.

- 4 -

Southern Pac. Transp. Co., 144 F.3d 1293, 1295 (10th Cir. 1998). "In this circuit, abuse of discretion is defined as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 763 (10th Cir. 1997) (quotations and citations omitted).

The Proctors proffered testimony from Mr. Esser to demonstrate that Gary Benuzzi, the IRS special agent investigating the Proctors, was biased in favor of Susan Elliott and against the Proctors. The district court determined that the testimony was irrelevant and unhelpful to the jury in determining the issues on trial: the evidence did not raise reasonable doubt based upon the government's conduct in its investigation of the Proctors, and other matters were already well established in the evidence. In addition, Fed. R. Evid. 608(b) prohibits the use of extrinsic evidence of specific instances of conduct for the purpose of attacking a witness' credibility. After reviewing the record, we conclude that this is the type of evidence that the Proctors were seeking to introduce and thus that the district court did not abuse its discretion in excluding it.

III.

The Proctors next assert that the district court erred in failing to provide them with Jencks materials from Agent Benuzzi's investigative report. The government submitted the full report to the court for an in camera inspection prior to trial according to the Jencks Act, 18 U.S.C. § 3500(c). The court found only

one item therein which it turned over to the Proctors without objection. We review for abuse of discretion. See Palermo v. United States, 360 U.S. 343, 353 (1959); United States v. Alvarez, 86 F.3d 901, 905 (9th Cir. 1996).

The Act provides that:

> If . . . any portion of such statement is withheld from the defendant and the defendant objects to such withholding, . . . the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge.

18 U.S.C. § 3500(c) (emphasis added). According to the Act, the statement is only preserved and thus appellate review is only possible if the defendant first objects before the district court. See United States v. Moody, 778 F.2d 1380, 1383 (9th Cir. 1985). Because the Proctors failed to object to the withholding of the rest of Agent Benuzzi's report, they have waived the issue.

IV.

The Proctors further contend that the district court erred in allowing two government witnesses to testify as experts. James Puckett was tendered as an expert in questioned documents and provided testimony as to the signatures or endorsements on 175 checks. Agent Benuzzi was offered as a summary witness, but the Proctors contend that he was a de facto "expert" in being allowed to give opinion testimony. "We review a trial court's admission of evidence, including scientific evidence, under an abuse of discretion standard." United States v.

Davis, 40 F.3d 1069, 1073 (10th Cir. 1994).

As to Mr. Puckett's testimony, the Proctors raise two issues: first, that the government failed to comply with Fed. R. Crim. P. 16(a)(1)(E), and second, that Mr. Puckett was not qualified to give expert testimony. Fed. R. Crim. P. 16(a)(1)(E) provides that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of [intended expert] testimony [which] shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." Although Mr. Puckett's report did not include the bases and the reasons for his opinion, the district court nonetheless found that the Rule 16 requirements were met: "It seems fairly clear, if not a matter of common sense, that the examiner compared the handwriting exemplars with a variety of checks and other documents and determined the authorship of each piece of evidence with varying degrees of conclusiveness." 8 R. at 490. Indeed, in his testimony Mr. Puckett described his methodology in detail. 9 R. at 502-06.

Still, the district court erred in finding that the government met the requirements of Rule 16(a)(1)(E). The government was required to provide a foundation for Mr. Puckett's opinions prior to trial. However, its failure to do so did not unfairly affect the substantial rights of the Proctors. See Frontier Refining Inc. v. Gorman-Rupp Co., 136 F.3d 695, 705 (10th Cir. 1998); 28 U.S.C.

§ 2111 ("On the hearing of any appeal . . . , the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."); see also United States v. Basinger, 60 F.3d 1400, 1407 (9th Cir. 1995). The Proctors knew before trial that Mr. Puckett would be testifying and what his opinions were. Also, at trial Mr. Puckett described his methodology in detail, and the Proctors had an opportunity to cross-examine him extensively on the reliability of that methodology. Finally, the Proctors could have asked for a continuance to prepare more fully to discredit Mr. Puckett's testimony. This they failed to do.

The Proctors further argue that Mr. Puckett was not qualified to give expert testimony, focusing on his lack of extensive formal education in questioned document examination. However, according to Fed. R. Evid. 702, "a witness [may be] qualified as an expert by knowledge, skill, experience, training, or education." At trial Mr. Puckett testified that he has examined documents on a full-time basis for seventeen years. As a senior forensic document examiner for the IRS national forensic laboratory, he has testified in more than 100 judicial proceedings. He is a member of numerous forensic science associations and receives additional instruction through annual training conferences. Even though

Mr. Puckett does not hold an advanced degree in the field of questioned document examination, the district court did not abuse its discretion in ruling that he had more than sufficient training, knowledge, skill, and experience to qualify as an expert in questioned documents.

As to Agent Benuzzi's summary testimony, the Proctors contend that he was improperly allowed to give expert opinion testimony. Agent Benuzzi prepared various summaries based on evidence which had already been admitted during the trial, and the summaries themselves were admitted into evidence without objection. His testimony was limited to describing the process by which he compiled the summaries, which were compilations of invoices, sales tickets, and checks, as well as comparisons of Ace's company books with those compilations. The Proctors do not argue that a summary witness must be first qualified as an expert–of course, such qualification is not necessary. See 5 Mueller & Kirkpatrick, Federal Evidence § 584 (2d ed. 1994); United States v. Olano, 62 F.3d 1180, 1203 (9th Cir. 1995). Our review of the record confirms the district court's finding that his testimony was limited to factual determinations, and thus we fail to find merit in the Proctors' claim that Agent Benuzzi was offering "expert" opinion. Accordingly, there was no abuse of discretion in admitting it.

V.

The Proctors also contend that the district court erred in its jury instruction on "materiality" and in not giving an instruction on "substantiality." "We review de novo a timely challenge to a jury instruction to determine whether, considering the instructions as a whole, the jury was misled." United States v. Winchell, 129 F.3d 1093, 1096 (10th Cir. 1997).

In this case the court instructed the jury that "material matters in income tax returns are those essential to the accurate computation of taxes." 11 R. at 921. According to the Proctors, this amounted to a directed finding of materiality. Instead, they argue, the court should have given an instruction on substantiality. However, the cases they cite in support of this argument all involve a different offense, income tax evasion, 26 U.S.C. § 7201, for which substantiality is, indeed, an element. See United States v. Meek, 998 F.2d 776, 779 n.5 (10th Cir. 1993). Since substantiality is not an element of § 7206(1), there was no error in declining to give such an instruction to the jury. However, materiality is an element of § 7206(1) which, according to United States v. Clifton, 127 F.3d 969, 971 (10th Cir. 1997), must be submitted to the jury. Thus, "[w]hile the trial judge must properly instruct the jury on the legal definition of materiality, only the jury can decide whether the facts proved at trial meet that legal standard." United States v. DiRico, 78 F.3d 732, 736 (1st Cir. 1996). In this circuit, "we have defined materiality under § 7206(1) as information necessary 'in order that the taxpayer . .

. compute his tax correctly.'" Clifton, 127 F.3d at 970 (quoting United States v. Strand, 617 F.2d 571, 574 (10th Cir. 1980)). This was essentially the definition given by the district court in this case, and thus the jury was properly instructed. Further, contrary to the Proctors' assertion, the jury, rather than the court, decided whether the facts met that standard. We conclude that the district court did not err in its instructions on materiality.

VI.

The Proctors assert that the district court erred in its application of the Sentencing Guidelines in its finding as to the amount of tax loss to the government and in giving an obstruction of justice enhancement. We review the district court's factual findings for clear error and its application of the Guidelines de novo. See United States v. Morales, 108 F.3d 1213, 1225 (10th Cir. 1997). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." Id. (quoting United States v. Torres, 53 F.3d 1129, 1144 (10th Cir. 1995)).

The district court adopted the findings of the presentence report in using the gross unreported receipts ($246,343.11) of Ace Glass to calculate the base offense level. No adjustment was made to account for evidence that some, and

perhaps most, of this money had gone back into the corporation to pay overtime in cash, or for employee cash withdrawals. Section 2T1.1(c)(1)(A) of the Guidelines provides that "the tax loss shall be treated as equal to 28% of the unreported gross income . . . , unless a more accurate determination of the tax loss can be made." The Proctors contend that there was sufficient evidence presented to accurately account for the overtime cash payments, which would have nullified any tax loss to the government. We agree that, had the Proctors presented reliable evidence as to the amount of overtime that was paid, there should have been an adjustment made to the amount of tax loss. However, the only evidence the Proctors adduced as to the amount of cash overtime payments was an accountant's estimate based upon hearsay which the district court properly described as speculative. 12 R. at 129. The only witness to testify was Ms. Elliott, who stated that she had received up to $4,000 in overtime. Even if the Proctors had been able to prove up to $100,000 in overtime payments, the sentencing range would have remained the same. The district court accommodated the consensus that some of the unreported receipts had gone back into Ace in the form of overtime cash payments by sentencing the Proctors at the low end of the guideline range. We conclude that the district court's finding as to the amount of tax loss was not clearly erroneous.

The Proctors also assert that the district court erred in its finding of obstruction of justice. Section 3C1.1 of the Guidelines provides that "[i]f the

defendant willfully obstructed or impeded, or attempted to obstruct of impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense by 2 levels." Application note 3 provides an example of such conduct: "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . , directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, cmt. 3(a). "We have held that attempting to influence the testimony of a potential witness can form the basis for an upward departure for obstruction of justice." United States v. Hernandez, 967 F.2d 456, 459 (10th Cir. 1992).

The Proctors' sentence was enhanced as a result of their initiating the filing of a criminal complaint against Ms. Elliott for embezzlement. The district court found that the Proctors instigated the state criminal investigation in order to harm Ms. Elliott's credibility as a witness against them. This finding was based on evidence that the Proctors knew that they were the focus of a criminal investigation and that Ms. Elliott would be speaking to the IRS. In addition, Ms. Elliott refused to accept the services of the Proctors' attorney. Although the Proctors did not actually know that Ms. Elliott was a cooperating witness for the IRS until after they initiated the criminal investigation against her, we are not able to say that the district court's factual findings are clearly erroneous.

VII.

- 13 -

Finally, the Proctors argue that the district court erred in denying their motions to appeal in forma pauperis and for court-appointed counsel pursuant to 28 U.S.C. § 1915(a)(1), (e)(1). We review the district court's denial for an abuse of discretion. See Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995). In support of their motions, the Proctors submitted financial affidavits in which they listed assets as approximately $55,000 and to which they attached statements of their debts totaling over $175,000. In response to the district court's order to specify monthly payments on their debts, the Proctors filed superseding motions which included an affidavit listing monthly expenses as approximately $3,784. The attorneys for the Proctors have further represented that they have not been paid for their services and have handled the appellate work pro bono. The district court denied the motions, finding that the Proctors had "not demonstrated sufficient inability to pay the costs of their appeals and for counsel on appeal." 1 R. doc. 78.

Section 1915 does not require a litigant to demonstrate absolute destitution. See Adkins v. E.I. Du Pont De Nemours & Co., 335 U.S. 331, 339 (1948); McCone v. Holiday Inn Convention Ctr., 797 F.2d 853, 854 (10th Cir. 1986). Given their substantial debt, we conclude that the Proctors made a sufficient showing of their poverty to be permitted to proceed on appeal in forma pauperis and to have counsel appointed. The district court's determination must be

REVERSED. We appoint attorneys Michael Louis Minns and Stanley D. Monroe, <u>nunc pro tunc</u>, to the dates appellants' appeals were perfected. The Clerk of this Court is directed to forward the appropriate voucher materials to counsel to submit request for payment.

AFFIRMED in part and REVERSED in part.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge